UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11143-RWZ

F/V MISTY DAWN, *et al.*

v.

OSPREY UNDERWRITING, *et al.*

ORDER

September 8, 2010

ZOBEL, D.J.

Plaintiff F/V Misty Dawn, Inc. ("Misty Dawn"), was sued by a former employee in 2008 and found liable, after a jury trial, for $2,307,690 in damages for injuries he had sustained while working on plaintiff's fishing vessel, Sea Watcher I. Misty Dawn's first excess insurer refused a pre-verdict settlement demand of $650,000, an amount within the first excess policy limit. Misty Dawn and three of the company's corporate officers now sue both the first and second layer of excess insurers, alleging that the first excess insurer breached a duty to use fair settlement practices and that the second layer excess insurers wrongfully refused coverage and proceeded under a reservation of rights. The insurers have filed multiple cross claims, most of which are centered on the alleged failure to use fair settlement practices. Pending before the court are the insurers' motions to determine which law governs the insurance contract between the plaintiffs and the first excess insurer.

**I.      Plaintiffs' Casualty Insurance and the Bielunas Litigation**

In 2006, Wojciech Bielunas, a Massachusetts resident, was injured while working aboard the F/V Sea Watcher, a ship operating out of Massachusetts. In 2008, he sued his employer and the owner of the vessel, the plaintiff and New Jersey citizen F/V Misty Dawn, Inc., in the United States District Court for the District of Massachusetts.

Misty Dawn held three layers of casualty insurance coverage. The $250,000 primary policy was exhausted by the costs of defending the Bielunas suit and providing Bielunas with maintenance and cure benefits, and the primary insurer is not a party to this action. The first layer of excess insurance for $750,000 was underwritten by defendant Certain Underwriters at Lloyds, represented by their agent the defendant Osprey Underwriting Agency Limited (collectively the "First Excess"), both operating out of London, England. The First Excess assumed the defense of the Bielunas suit. Misty Dawn carried a second layer of excess insurance for $9,000,000 underwritten severally but not jointly by defendants XL Specialty Insurance Company, a resident of Delaware and New York, and Federal Insurance Company, a resident of Indiana and New York (collectively the "Second Excess"). Second Excess played a limited role in the defense of the Bielunas action while reserving the right to deny coverage for various alleged breaches of the policy.

The Bieulnas suit proceeded to trial in parallel with settlement talks. At the start of the trial Bielunas' demanded $650,000 and refused to accept First Excess' counter-offer of $575,000. After the close of evidence but prior to the jury verdict the insured and the Second Excess demanded that First Excess accept the $650,000 settlement

offer, an amount which was within the First Excess policy limit. First Excess did not do so. The jury returned a verdict in Bielunas' favor for $2,775,000, reduced by his contributory negligence to $2,307,690.

After the verdict Bielunas filed an in rem action against the F/V Sea Watcher to protect his interests in light of the Second Excess' reservation of rights. First Excess thereafter paid the premium for a surety bond to secure the judgment in the Bielunas action. The surety required both First Excess and Second Excess to issue counter-indemnity letters for their respective portion of the surety's potential obligation. Plaintiffs nonetheless remain exposed to potential liability because Second Excess has stated that it may seek recovery from Misty Dawn for any payments made pursuant to the counter-indemnity letter.

## II.    The Instant Lawsuit

Misty Dawn and co-plaintiffs Leroy Truex, Martin Truex, and James Meyers, all Florida residents, officers in Misty Dawn, and insureds under the policies at issue, brought this suit against First Excess and Second Excess as well as their insurance adjustor, the Virginia Corporation Flagship Maritime Adjusters, Inc., their insurance broker, the Virginia corporation Flagship Group, Ltd., and the parent company to the broker and adjuster, the Florida corporation Brown & Brown, Inc. First Excess' rejection of the $650,000 settlement offer is alleged to have violated a duty owed to plaintiffs to use fair settlement practices, and the Second Excess is alleged to have wrongfully refused coverage and reserved rights. The claims against the insurance broker and

3

adjuster concern the possible failure to notify Second Excess of the claim in accordance with policy requirements.

First Excess and Second Excess filed multiple cross-claims, the majority of which center on the alleged failure to use fair settlement practices. They dispute whether First Excess' settlement obligation under the insurance policy is defined by Massachusetts or New Jersey law. This distinction may matter because Second Excess' cross-claims are
premised on a direct duty owed from First Excess to Second Excess rather than an equitable subrogation theory, a duty that, according to the insurers, is recognized by several New Jersey courts but no Massachusetts court.  New Jersey and Massachusetts also use different terminology to describe an insurer's good faith settlement obligation, although counsel for the insurers were unable at the motion hearing to articulate any substantive difference.

### III.     Analysis

First and Second Excess agree that the claims at issue fall within the court's admiralty jurisdiction and, because no substantive rule of maritime law defines the good faith duty of settlement, the court applies federal choice of law rules as articulated in the Restatement (Second) of Conflict of Laws to determine which state's substantive law applies.[1] The Restatement identifies five factors that a court should consider when selecting the applicable law: (1) achieving a result acceptable to all interested states;

---

[1] Second Excess argues, in the alternative, that these claims arise under diversity jurisdiction and the court should apply the Restatement (Second) because it is the approach used by Massachusetts courts.

(2) the policy of the forum and other interested states; (3) the protection of justified expectations; (4) the basic policies underlying the particular field of law; and (5) ease in the determination and application of the law.  Restatement (Second) of Conflict of Laws § 6 (1971); id. at § 145 cmt. b.  The relative importance of each factor varies depending on the area of law at issue, e.g., contract, tort, or property.

The First Excess argues that this is a tort action, while the Second Excess asserts that it sounds in contract.[2]  The contract provision of the Restatement is the better match with this insurance dispute.  Any obligation from First Excess to Second Excess arises out of the insurance contract, whether a direct duty or a subrogation claim.  It was not created by the Bielunas tort.

The basic policy underlying contract choice of law is to protect the expectations of the parties.  If the parties choose a governing law, that choice is given effect.  Id. at § 187.  If they do not, the court attempts to ascertain the law with the most significant relationship to the litigation by looking at certain contacts between the litigation and the interested states.  Id. at § 188.

When parties to a contract choose the governing law they typically do so in the contract.  No choice of law clause appears in the First Excess policy and the insurers have briefed a contacts analysis.  They point to a multitude of contacts, sometimes premised on disputed facts, in support of their preferred law.  Some contacts, such as the domicile of Misty Dawn, do point to NJ, but the majority point elsewhere, such as

---

[2]The Restatement does specifically address casualty insurance, but that provision does not apply where the insured risk is mobile and frequently travels. Id. at § 193 & cmt. a.

the negotiation and signing of the contract in London, and the residence of the other three plaintiffs in Florida. Both Massachusetts and New Jersey have an interest in regulating First Excess' settlement conduct, because the settlement negotiations directly impacted both Bielunas, a Massachusetts resident, and Misty Dawn, a New Jersey corporation. Under these circumstances, there is little to distinguish the interests of any of the states, and a decision to label one as having the "most significant relationship" would border on the arbitrary.

      Fortunately, a contacts analysis is unnecessary. The parties bound by the first excess policy - Plaintiffs and First Excess - did chose the governing law; they did so during the Bielunas litigation rather than in the policy itself. The plaintiffs threatened to bring a claim under Massachusetts law against First Excess for unfair claim settlement practices if First Excess did not accept Bielunas' settlement demand. (June 18, 2009 Correspondence, Docket #1 Ex. 4.) Second Excess received a copy of this communication (id.) and voiced no objection to the application of Massachusetts law. First Excess thereafter conducted settlement negotiations under the assumption that any settlement obligation was defined by Massachusetts law. (Declaration of Lev Osman § V, Docket # 39 Ex. C.) It would be inequitable to evaluate First Excess' settlement conduct under the standard of a different law when they relied on plaintiffs' express citation to Massachusetts law and Second Excess voiced no contemporaneous objection.

      The application of Massachusetts law does not offend the policies of New Jersey. Counsel at the motion hearing was unable to substantively distinguish the two

states' good faith standards.  New Jersey law may differ from Massachusetts law in that it recognizes a direct duty owed from First Excess to Second Excess to engage in fair settlement practices, but as no excess insurer resides in New Jersey, no state interest is implicated in the resolution of the dispute between the insurers.

## IV.   Conclusion

Massachusetts law will govern resolution of these disputes.  Accordingly, First Excess' motion for a ruling regarding choice of law (Docket # 39) is ALLOWED.  Second Excess' motion for a ruling regarding choice of law (Docket # 37) is DENIED.  First Excess' motion for leave to file a reply (Docket # 44) is ALLOWED.


    September 8, 2010                               /s/Rya W. Zobel
          DATE                                      RYA W. ZOBEL
                                               UNITED STATES DISTRICT JUDGE